Civil Rights Complaint
42 U.S.C. § 1983

United States District Court
Eastern District of New York
———————————————×
Brett Johnson,
        Plaintiff,      Amendment

  -against-

Nassau County; Detective Juan    13-cv-6510 (JS)(WDW)
Giron, Fourth squad; Detective
Robert Nemeth, Fourth squad;
and Detective Jarred Tropermann,
of the 113 Precinct,
        Defendants.
———————————————×

    As for A first cause of Action
        Amendment

    Nassau County, violated Plaintiff's Constitutional rights to Due Process and equal Protection of the law by failing to release him upon his 180.80 date; Plaintiff was arrested at 11:39 Am on July 31st and the record shows that Plaintiff testified on 8-6-13 at approx. 4:00 PM well past the 144 hours alloted to the People.

    Oddly enough, Nassau County has also violated Plaintiff's Due Process and Equal Protection rights; by failing to allow the Plaintiff the use of the Law Library

...durring a criddical time period inwhich the Plaintiff only had approximately 5 (five) days to file his motion to gain possible release on his 180.80 claim; this was impossible to do due to the one hour a week policy of the Detention Center. Plaintiff only had a five day deadline to file said motion. By the time Plaintiff finelly got his motion off it was denied by Justice George Peck as academic because Plaintiff had a parole hold by, by the time motion was filed. If allowed to file motion on time Plaintiff would have never had a hold.

    The Supreme Court held - the Constitutional right to access to the Courts entitles Prisoners to either "adequate law libraries or adequate assisstance from persons trained in the law". No adequacy and no trained person to assisst alone should be enough being that the Supreme Court entitled it Constitutionally.

    Furthermore, the N.Y.S. Minimum standards has clearly stated "each prisoner shall have daily and equal access to such materials and supplies".

    The Minimum standards is the official policy that is endorsed by this municipality (Nassau County).

    Whats baffaling is the law of the land will be quoted time and time again and the policymakers of the land will keep allowing the policy makers of Nassau County to keep thwarting justice.

2

Here in Nassau County the Policymaking officials clearly has exhibited indifference to Constitutional deprivations caused by its subordinates for years.

Nassau County has to be held liable for its continually turning a blind eye to the behavior of its subordinates at the Detention Center. The rogue policies has been taking place for years it has not just started. This is more than a pattern of misconduct this has become a culture of misconduct that no one seems to be able to check.

The Policymaking officials in Nassau County are clearly known to be the most racist and disrespectful towards the N.Y.S. and Federal Constitutions ever seen in the state of New York; whats even more bewildering is that this is nothing new; its as if they (Nassau County) have succeeded from the union of the united States.

Furthermore, I also would like to charge Nassau County with the continued practices of solitary confinement for no reason, no disciplinary action or threats to the security of the facility or anything. I am locked in 16 hours a day and this is regular procedure at the facility. Every day; This violates my N.Y.S. Constitutional right to equal protection of the law as well as my united states rights to be free from cruel and unusual punishment; this behavior is atypical of N.Y.S. detainee practices and should be corrected.

3

Nassau County is also responsible for its rogue Detectives that has violated Plaintiffs Constitutional rights to due Process, Equal Protection of the law and his 4th Amendment right to be Secure in one Papers, and other effects.

Where, Nassau County detectives used rogued Procedures to learn Plaintiffs identity by threatening a medical Secretary for information. Furthermore, these Same detectives deliberately filed false trumped up Charges against Plaintiff after having a video to Study of the Crime which Clearly Shows what took Place, this clearly shows a great deal of biasness, indifference to the law, ignorance, racist Practices, this is plain malicious hatred. This behavior by the officers was deliberate to cause Plaintiff additional hardships of a higher bail and being detained So far over 7 months.

These officers new that this was a medical Clinic that needed Some form of warrant or hippa release form to open any files.

Instead these Same detectives Juan Giron and Robert Nemeth threatened the secretary to take her Car, Police Practices are non negotiable if the car was used in the Commission of a Crime then it Should have been Confiscated. Instead it was used as a negotiable instrument to an end as a Ploy to find Plaintiffs identity.

4

I am more than sure that these Practices are not Part of Nassau Counties Police department trainings, so for these officers to use such techniques are totally violative of Plaintiffs rights. Please see video before it disappears.

## As for A Second Cause of Action

## Amendment

Nassau County detectives Juan Giron Serial# 8975 and Sgt. Robert Nemeth Serial #6905 has violated Plaintiffs Constitutional rights to Due Process and his right to Equal Protection of the law as well as his Fourth Amendment right to be secure against illegal searches of Papers and other effects, such as medical records.

The detectives who did not know who they were looking for used rogued measures as if they were the mob to Sollicit information from Plaintiffs therapy Clinic by threatening the Secretary for Plaintiffs identity.

She had Previously told the detectives that she did not know Plaintiff. A Couple of weeks later detective Giron and Nemeth came back and threatened to take the Secretaries car if she did not open the files of the Plaintiffs.

5

This form of extortion not only violates the Constitutional rights of the Plaintiffs but it also violates the HIPPA Laws put in place to thwart this type of treason.

The proper method would have been to secure a warrant or some form of Judges order to release said information from the Clinic. It can clearly be seen that the Secretary yeilded to such demands because Plaintiff is incarcerated; were secretary gave officers everything fairing that she would'nt have transportation to and from work.

Once detective Giron and Nemeth received Plaintiffs identity they further violated Plaintiffs rights to Equal Protection of the law by trumping up the Charges deliberately to cause the Plaintiff additional harm.

Plaintiff Charges presently resides on video and is clearly a Petit Larceny; however, detective Giron and Nemeth seen fit to charge Plaintiff with a burglary for no other reason than he's Black this racial profiling and fixing of charges must stop.

One could only wonder if a trained official have a video of a Crime depicting exactly what it is the the only other reason that a official such as a detective would put a totally different and higher charge is Hatred.

6

From the video it can clearly be seen that detective Giron and Nemeth intentions were done out of pure malice. Also lets remember we are not talking about some rookies but seasoned detectives one being a Sgt. among other things.

Furthermore, Robert Nemeth being the supervising officer should have took control of the situation and charged the Plaintiff correctly so as not to cause additional harm.

It is explicit to me that it is pure hatred, spitefulness, and racist behavior by both of these officers, what else could it be when you have a video that clearly depicts whats done; Nassau County is known for its blatant racist disregards.

~~Plaintiff will leave Detective Jarred Tefferman Action the same being that he was ordered served~~

As for a fifth Cause of Action

On September 1st 2011, while sitting across the street from my home on a park bench while eating a Slim Jim, Det. Jarred Tefferman jumped out of an unmarked car and stated "What are you eating", and I responded "None of your Business". Det. Tefferman further state "Well you can put your hands behind your back smart ass, what ever your eating you can finish it at Central Bookings".

7

Detective Jarred Teppeman of the 113 Precint violated Plaintiffs civil right by falsely arresting him and harrassing and racial profiling him for no other reason than he's Black. The Plaintiff was arrested with nothing, and was forced to deal with strip searches for absolutely nothing.

Being that the N.Y.C. 113 Precint was dismissed the Plaintiff changed the words "and the NYC Precient 113", for, "of the 113 Precint see underlined."

## First Cause of Action injurries

Nassau County has violated Plaintiffs Constitutional rights causing him great pain and suffering by not releasing him on his 180.80 date and time. This failure to timely release Plaintiff caused him to physically suffer because of a lack of Physical Therapy that Plaintiff was receiving on the outside; not to mention the mental pain and loss of liberty coupled with the stress of the domestic seperation among other things; this constitutional deprivation that Nassau County are continually indulging in against under priviledged monorities must stop.

Furthermore, Nassau County has also denied Plaintiff his right to access to the courts by enabling him to use the law library to research and prepare motions in a timely fashion which caused the Plaintiff to miss a criddical 5 day deadline to file a motion to get release under 180.80.

8

This caused the Plaintiff approximately an extra 190 days in Prison.

It is the Policy of N.Y.S. that all Prisoners will have daily access to the law library; the Supreme Court entitles Prisoners with the Constitutional right to access to the Courts and adequate libraries, these libraries are clear Constitutional injuries in itself.

What more must one prove when the Supreme Court set the tone; what should be done is an investigation on the merits of ones claim to see if the libraries are actually sufficient and can you get the help thats required by a trained official thats also required by the Courts. This has injured Plaintiff in more ways than just his access to the courts, because if Plaintiff would have had the guaranteed qualified assistance that the Supreme Court guaranteed him who knows where Plaintiffs case would have been; Possibly dismissed, because even till now Plaintiff dosent have a true bill indictment asts going to the grand jury Personally; so with the Proper help Plaintiff may have been home.

Moreover, Nassau County has cause the Plaintiff a great deal of undue stress and mental anguish with the continued solitary confinement of 16 hours a day locked in for no reason the State has warned Nassau County about this time and time again. See, Exhibit "A"

9

Also, for the lack of Physical therapy, mental anguish, stress and over six months in Prison caused by detectives Juan Giron and Sgt. Robert Nemeth of the South squad has also over charged Plaintiff as well as used violative behavior by threatening Plaintiffs therapy Clinic and violating his constitutional rights in total Nassau County should be liable for no less than $500,000, Five hundred thousand dollars.

### Second Cause of Action injurries

Officer Giron Juan and Nemeth Robert actions has caused Plaintiff a great deal of Pain and suffering Physically from not being able to complete my Physical therapy not to mention the mental anguish caused by the trumped up charges and the violation of Plaintiffs medical Confidentiality. For the racist Practices detective Juan Giron should be liable for no less than $200,000 dollars (two hundred thousand dollars) and sgt. Robert Nemeth for being a super-visor and allowing this behavior to move foward unattended or Corrected should liable for no less than $300,000 dollars, (three hundred thousand dollars).

<u>As for A Fifth Cause of Action injuries</u>

Detective Jarred Tepperman cause the Plaintiff mental anguish and a great deal of stress as well as over 100 days in Prison from Parole because of the arrest; for false arrest$$, harrassment, Prison time and mental anguish the Plaintiff should receive no less than $100,000 dollars, (one hundred thousand dollars).

I declare under Penalty of Perjury that on Febuary 19th, I delivered this complaint to Prison authorities to be mailed to the United States District Court for the Eastern District of New York.

Signed this 19 day of Febuary, 2014. I declare under Penalty of Perjury that the foregoing is true and correct.

_Burtt Johns_
Signature of Plaintiff

_Nassau County Detention_
Name of Facility

100 Carmen Ave
Eastmeadow N.Y.
11554
ID 13005639

11

Exhibit "A"

Exhibit "A"

# Final warning for Nassau jail

- State rejects renting cells for Suffolk overflow
- Says insects, filth still violate New York standards

BY ZACHARY R. DOWDY
AND MATTHEW CHAYES
zachary.dowdy@newsday.com
matthew.chayes@newsday.com

ALBANY — Despite years of warnings, Nassau jail officials have failed to fix unlawful conditions, including filthy showers and the overuse of solitary confinement, the state's jail overseer said.

These violations and others are prompting the state to threaten to issue the jail a rare, final warning to clean up conditions or face a lawsuit to force compliance with state standards.

"There's like a half-dozen jails across the state that we have concerns about," said state Commission of Correction chairman Thomas Beilein. "The problem with Nassau is it's such a large facility . . . and a facility of that size needs to be run better than this one is being run."

In the latest salvo of the battle between the jail and the commission, Beilein yesterday said that he would not allow jail officials to rent more of their 500 or so empty jail cells to Suffolk County until Nassau clears "all of the long outstanding violations."

The rejection of the plan to house Suffolk's overflow inmates — which Nassau officials on Tuesday assured the Nassau Interim Finance Authority would be a virtually guaranteed source of revenue — is another blow to a county that is struggling to close a $176-million budget gap. The cells could be rented for about $125 per inmate per day, totaling $4.6 million a year for every 100 cells leased.

Elizabeth Loconsolo, the jail's attorney and spokeswoman, called the dispute over the jail's compliance "a professional disagreement," saying the commission applies its regulations inconsistently "from jail to jail within the state." Asked if the jail was having trouble meeting state standards, she said "absolutely not."

The jail has resolved many of the violations the state has cited since December 2008. But Beilein said other serious ones persist at the 1,500-inmate facility, the state's largest county lockup.

Inspectors in October 2009 found insects crawling on piles of inmates' outdoor clothing, and improper laundry practices that caused the infestation have not been fixed. They found chronically dirty and broken showers in "deplorable" condition. And they said jail officials relied too often on segregating inmates from the general jail population before they had been found guilty of violations.

She denied that the jail improperly uses solitary confinement — and said that it deploys the sanction only when an inmate "constitutes a threat to the security, safety and good order" of the jail.

Beilein was alarmed that the jail has cut several top positions, a move he said makes "it difficult at best to monitor your own facility." Having more senior staff could help resolve many of the outstanding violations and help keep tensions inside the jail to a minimum, he said.

Loconsolo countered that the jail's management structure meets standards established by the commission in 1995.

Beilein said it is rare that a facility disputes so many of the commission's findings. "That is unique to Nassau," Beilein said.

Beilein warned that if Nassau doesn't strengthen the management of the jail and clear up the violations, the commission would issue the directive warning of a lawsuit.



The Nassau County [jail ...] still falls short.

### LIST OF VIOLATIONS

Conditions cited by the State Commission of Correction include:

- Insect-infested inmate clothing
- Ineffective grievance procedures
- Greasy, unsafe kitchen floors
- Excessive use of solitary confinement
- Dirty showers and moldy living spaces
- Allowing an inmate with a bleeding hand to do food service wearing a Band-Aid and glove but without seeing a medic